BRONSON LAW OFFFICES, P.C.
Counsel for the Debtor
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530
H. Bruce Bronson, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
In re:

    PHILIP C. ROVENTINI,

                                Debtor.

---------------------------------------------------------------X

Case No. :10-24212 (RDD)

Chapter 11

## PLAN OF REORGANIZATION

    PHILIP C. ROVENTINI, debtor and debtor-in-possession (the "Debtor") proposes the following Chapter 11 plan of Reorganization (the "Plan") pursuant to Title 11 of the United States Code:

### ARTICLE 1

### DEFINITIONS

    For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) of the Code which may include Claims pursuant to Section 506(c) of the Code, including compensation for all professional services and reimbursement of expenses awarded by the Bankruptcy

Court.

2. "**Allowed Claim**" means (1) a Claim timely filed before the Bar Date of November 29, 2013 at 5:00 p.m., and (a) as to which no objection has been filed within the time fixed in this Plan or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, or (3) a claim allowed pursuant to an order of the Bankruptcy Court.

3. "**Bank**" means the Bank of America, N.A. and its predecessors in their capacity as holder of that certain promissory note dated as of December 21, 2005 in the original principal amount of $580,000 (the "**Note**") in favor of Washington Mutual Bank, N.A. ("**WaMu**") and assignee of that certain mortgage dated as of December 21, 2005, securing the obligations under the Note with a lien upon the Debtor's Residence (the "**Mortgage**").

4. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

5. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto filed by the Debtor pursuant to Bankruptcy Rule 1007.

6. "**Bar Date**" means November 29, 2013, at 5:00 p.m., the date by which a proof of Claim is required to be filed with the Clerk of the Court in this case.

7. "**Cash**" means cash or cash equivalent (a) of the Reorganized Debtor on hand as of the Effective Date, (b) realized from the Debtor's or Reorganized Debtor's business operations following the Effective Date, and/or (c) contributed or loaned to the Debtor or Reorganized Debtor by third parties.

8. "**Chase**" means JP Morgan Chase Bank, N.A. in its capacity as servicer for the Bank in connection with the Note and Mortgage.

9. "**Claim**" shall mean a right to payment as set forth in Section 101(5) of the Code.

10. "**Claimant**" shall mean the holder of a Claim.

11. "**Code**" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

12. "**Confirmation**" means approval of this Plan by order of the Bankruptcy Court under Section 1129 of the Code following a hearing and notice thereof in accordance with the Code and Bankruptcy Rules.

13. "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

14. "**Confirmation Hearing Date**" shall mean the date set by the Court for the hearing on confirmation of the Plan.

15. "**Confirmation Order**" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

16. "**Debtor**" means Philip C. Roventini, an individual.

17. "**Disputed Claim**" means:

 (a) any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and

 (b) any filed Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

18. "**Effective Date**" means the date upon which the Confirmation Order becomes a Final Order.

19. "**Final Loan Modification**" means the permanent loan modification offered to the Debtor by Chase in connection with the Note and Mortgage pursuant to the terms and conditions set forth in that certain Stipulation of Settlement, dated as of July 5, 2017 among, the Debtor, Mary Ann Roventini, the Debtor's wife, and Chase (the "**Stipulation**") and attached to the Debtor's motion filed as ECF Docket No.172 pursuant to Bankruptcy Rule 9019 (the "**9019 Motion**") for an order approving the terms and conditions set forth in the Stipulation and the accompanying loan modification.

20. **"Final Order"** means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review or rehearing has been waived or (b) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

21. **"Impaired"** means impairment of a class of Claims under Section 1124 of the Code.

22. "**Loan**" means the obligations evidenced by the Note and Mortgage.

23. "**Petition Date**" means October 25, 2010, the date on which the Debtor filed his voluntary Chapter 11 petition.

24. "**Plan**" means the Chapter 11 plan of reorganization filed by Debtor, as contained herein.

25. "**Priority Claim**" means all Claims that are entitled to priority pursuant to Code Section 507(a).

26. "**Priority Tax Claim**" means all Claims that are entitled to priority pursuant to Code Sections 502(i) and 507(a)(8).

27. **"Pro Rata"** means with respect to a class member, in the same proportion as the

amount of such member's Allowed Claim over the total Allowed Claims in such class.

28. **"Reorganized Debtor"** means the Debtor after the Effective Date.

29. **"Residence"** means the Debtor's interest in the real property constituting the principal residence of the Debtor and his family located at 8 Lafayette Rd., New City, N.Y. 10956.

30. "**Secured Claim**" means a Claim secured by a lien, judgment lien, mortgage or security interest on property of the Debtor's estate to the extent of the value of the property of the Debtor's estate securing such Claim, and any valid and enforceable right of setoff.

31. "**Secured Creditor**" means the holder of a Secured Claim.

32. **"Settlement Payment"** means the amount to be paid to Debtor's estate in the amount of Two Hundred and Ten Thousand ($210,000) Dollars pursuant to the terms of the Stipulation, to the extent approved in connection with the 9019 Motion.

33. **"Trial Loan Modification"** means the trial loan modification offered to the Debtor by Chase in connection with the Note and Mortgage pursuant to the terms and conditions set forth in the Stipulation.

34. **"Unsecured Claim"** means a Claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim.

35. "**Unsecured Creditor**" means the holder of an Unsecured Claim.

36. "**US Trustee Fees**" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

All rules of construction contained in Section 102 of the Code apply in the construction of the Plan.

# ARTICLE 2

## UNCLASSIFIED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES

Pursuant to section 1123(a)(1) of the Code, the Plan does not classify Administrative Expense Claims and Priority Tax Claims, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid in full in Cash on the later of the Effective Date or entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties. The primary Administrative Expense Claims consist of professional fees and expenses for the Debtor's prior counsel, Allen A. Kolber, Esq. in the estimated amount of $10,000 and current bankruptcy counsel, Bronson Law Offices, P.C., in the estimated amount of $40,000 for Professional fees and expenses comprising Administrative Expense Claims are to be paid pursuant to approved fee applications upon notice and hearing.

2. **Priority Tax Claims**. Allowed Priority Tax Claims shall be paid in full upon the Effective Date.

3. **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees shall be paid on the Effective Date.

# ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1. **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

   **Treatment-** The Allowed Priority Claims, if any, shall be paid in full in Cash on the Effective Date. There are not expected to be any Allowed Priority Claims.

   **Right to Vote.** Class 1 is not Impaired under the Plan and is not entitled to vote to accept

or reject the Plan.

**2. Class 2-Allowed Secured Claims.** Class 2 consists of all Allowed Secured Claims, with **Class 2 A** containing the Loan on the Residence; **Class 2 B** containing secured loans for the Debtor's investment properties; and **Class 2C** the note and mortgage on 27 Tanager Road, which will be surrendered.

**Treatment**-**Class 2 A.** The obligations evidenced by the Note and Mortgage as modified pursuant to the Stipulation and the Final Loan Modification, to the extent that the 9019 Motion is granted, shall be treated as an Allowed Claim of the Bank secured by a first priority lien and mortgage upon the Residence and shall have all of the benefits and protections of the Stipulation, which is incorporated herein by reference. The Bank shall have an Allowed Secured Claim in the amount of $647,459.81 upon approval and implementation of the Final Loan Modification. The Bank's Allowed Claim shall be paid directly by the Debtor pursuant to the terms of the Final Loan Modification. The Bank shall not otherwise receive any distribution under the Plan on account of its Allowed Secured Claim.

**Class 2 B.** The Class 2 B Allowed Claims consist of the secured loan of JP Morgan Chase on the property located at 204 Green Meadow, Chester, NY in the amount of $84,209.01 (claim no. 2-1); and the secured loan of JP Morgan Chase on the property located at 107 Green Meadows Way, Chester, NY in the amount of $86,170.58 (claim no. 3-1).

**Class 2 C.** The Class 2 C Allowed Claims consist of the note and mortgage held by ASC in the amount of $89,620.45 (claim no. 10) on Debtor's 27 Tanager Road property which Debtor is surrendering or causing to be surrendered. If a deficiency is asserted, Class 2 C will be Impaired under the Plan. *See Article 7, Paragraph 12*.

**Right to Vote.**

Class 2 A is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

The Bank has agreed to vote in favor of the Plan provided the 9019 Motion is granted and the Stipulation is approved.

Class 2 B will be paid in accordance with the terms of their respective contracts and is not Impaired under the Plan and is not entitled to vote to accept or reject the Plan.

Class 2 C is impaired and entitled to vote.

3. **Class 3-Allowed Unsecured Claims.** Class 3 Allowed Unsecured Claims consist of the following, subject to reduction by agreement of the parties:

| Claimant | POC No. | Claim | Other |
|---|---|---|---|
| **JP Morgan Chase**<br>PO Box 29550, Mail Code AZ1-1004<br>Phoenix, AZ 85004 | 1-2 | $50,634.35 | |
| **Chase Bank USA, N.A**.<br>PO Box 15145<br>Wilmington, DE 19850 | 4 | $7,988.29 | |
| **PRA Receivables**<br>HSBC Bank Nevada, N.A.<br>PO Box 12907<br>Norfolk, VA 23541 | 5-1 | $10,886.67 | |
| **Key Bank**<br>PO Box 94968<br>Cleveland, Ohio 44101<br>(claimed guarantee) | 7 | $45,998.67 | Disputed /No guarantee |
| **Amex**<br>c/o Becket and Lee LLP<br>POB3001<br>Malvern, PA 19355 | 9-1 | $39.93 | |
| **America's Servicing Company**<br>One Home Campus MAC x2302-04c<br>Des Moines, IA 50328<br>(Guarantee) | 10 | $89,620.45 | Disputed/Surrendered/Possible Deficiency of $19,620.45 |
| **M&T Bank**<br>c/o McCabe & Mack, LLP<br>63 Washington Street<br>Poughkeepsie, NY 12601 | 12-2 | $81,015.80 | |
| **JP Morgan Chase**<br>PO Box 29550 AZ1-1004<br>Phoenix, AZ 85038 | 13-1 | $81,375.28 | |
| **Citi**<br>PO Box 6241<br>Sioux Falls, SD 57117 | Petition Schedule F | $19,989.00 | Unliquidated* |
| **Citi**<br>PO Box 6241 | Petition Schedule F | $17,066.00 | Unliquidated* |

| | | | |
|---|---|---|---|
| Sioux Falls, SD 57117 | | | |
| **Citibank**<br>1400 Technology Drive<br>O Fallon, MO 63368 | Petition Schedule F | $170.00 | Unliquidated* |
| **HSBC**<br>PO Box 5253<br>Carol Stream, IL 60197 | Petition Schedule F | $10,729.00 | Unliquidated* |
| | Total: | **$231,940.32** without disputed and unliquidated<br>**$279,894.32** (without disputed)<br>**$345,513.44** (with disputed and unliquidated) | Based upon $172,000 to distribute the percentage dividend to unsecured creditors is 74%, 61% or 50%, respectively. |

*Unliquidated claims have not filed proofs of claim and Debtor believes these amounts have been discharged or reduced. In the event these creditors submit evidence of the amount owed they will be paid pro-rata with the other unsecured creditors. If they do not indicate the amount owed, they will not be paid as being unliquidated amounts.

**Treatment-**The Class 3 Unsecured Claims will receive pro-rata distributions from funds available to the Debtor pursuant to the Stipulation (assuming approval by this Court), cash on hand in the Debtor-in-Possession Account, and amounts contributed by Debtor from disposable income deemed to be $200 per month over five years or $12,000, after payment in full of all claims with priority over the Unsecured Claims.

**Right to Vote.** This class is Impaired and entitled to vote to accept or reject the Plan.

## ARTICLE 4

## IMPLEMENTATION OF THE PLAN

Consummation of the Plains contingent upon the Bankruptcy Court granting the 9019 Motion and approving the Stipulation. Pursuant to the Stipulation, among other things, the estate shall receive the sum of $210,000 for the purposes of making distributions under the Plan and the Debtor will receive the Final Loan Modification which will allow the Debtor to have disposable income to fund the Plan. Absent approval of the Stipulation the Debtor lacks sufficient funds to confirm a plan. Approval of the Stipulation as part of the Plan provides creditors with a

substantially greater recovery than alternatives, including liquidation. Debtor sPayments to holders of Allowed Claims under the Plan will be made by the Debtor/Reorganized Debtor from (a) Cash on hand as of the Effective Date (including amounts to be contributed pursuant to the Stipulation, assuming it is approved by this Court), (b) Cash contributed or loaned by third parties, if any; and (c) Debtor's disposable income over the next five years deemed to be $200 per month over five years or $12,000, which shall be distributed annually on the anniversary of the Effective Date for the next five years, or sooner. Professional fees for services rendered and expenses incurred by the Debtor's attorneys subsequent to the Effective Date in connection with the Plan or the Debtor's/Reorganized Debtor's chapter 11 case, may be paid by the Debtor without prior court approval, to the extent that Section 1123(a)(6) of the Code is applicable.

## ARTICLE 5

## APPROVAL OF THE STIPULATION

1. The Stipulation and all of its terms and conditions, including without limitation, the Trial Loan Modification, the Permanent Loan Modification, and the releases set forth in the Stipulation are incorporated herein by reference as if fully set forth.

2. The automatic stay is modified to permit Chase to file and record such documents as may be necessary to implement the Stipulation, including to perfect the Bank's first priority mortgage in and upon the Residence.

3. The Debtor, Mary Ann Roventini, Chase and the Bank are authorized and directed to execute such documents and take such actions as may be necessary to implement the Stipulation and the Trial ad Permanent Loan Modifications.

4. The Bank shall be deemed to vote its Allowed Claim in favor of the Plan.

5. All claims, known or unknown, asserted or unasserted, in law or equity against Chase and the Bank, and their respective, predecessors, successors, assigns, officers, directors, and

      insurers, including all claims under Chapter 5 of the Bankruptcy Code, are released and waived.

6. All defenses, offsets, counterclaims, in law or equity to the obligations under the Loan as modified by the Stipulation and Final Loan Modification are released and waived.

7. All liens and mortgages in favor of the Bank secured by the Residence are deemed duly perfected, valid, first priority liens and mortgages.

# ARTICLE 6

## PROVISIONS GOVERNING DISTRIBUTIONS

**1. Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor immediately after the Effective Date.

**2. Rights and Powers of the Debtor.** The Debtor/Reorganized Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections or other causes of action on behalf of the Debtor's estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**3. Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, only the Debtor shall have standing to file and prosecute objections to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date in accordance with the applicable provisions of the Code and Bankruptcy Rules.

**4. No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be

retained by the Debtor/Reorganized Debtor until such time as the Claim is finally Allowed at which time such withheld Cash shall be paid to the holder of such Allowed Claim.

**5. Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned as undeliverable, no further distribution hereunder shall be made to such creditor unless such creditor notifies the Debtor in writing of its correct address. Any undeliverable distribution shall revert to the Debtor. Debtor shall make reasonable efforts to locate holders of Allowed Claims.

## ARTICLE 7

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**1. Executory Contracts and Unexpired Leases.** To the extent the Debtor is a party to an executory contract or unexpired lease which has not otherwise been assumed or rejected prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption of such Executory Contract or unexpired lease pursuant to Section 365 of the Code. In the event any lease is to be assumed that is not paid currently, Debtor will as a condition of assumption cure the lease by making payment of the amounts owed. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing Date to oppose such assumption or cure amount. Debtor is not aware of any leases or executory contracts to which he is a party.

## ARTICLE 8

## MISCELLANEOUS PROVISIONS

**1. Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan, including but not limited to an order granting the 9019 Motion and/or approving the Stipulation.

**2. Compliance with Tax Requirements.** In connection with the Plan, the Debtor/Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

**3. Due Authorization by Creditors.** Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4. Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5. Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**6. Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

**7. Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

**8. Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to the Debtor/Reorganized Debtor at: Bronson Law Offices, P.C., 480 Mamaroneck Avenue, Harrison, NY 10528, Attention H. Bruce Bronson, Esq.;

(b) If to any creditor at (i) the address set forth on the respective proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(d)  if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

**9. Governing Law.** The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

**10. Other actions.** Nothing contained herein shall prevent the Debtor from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

**11. Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**12. Surrender of Property.** Debtor is the guarantor on a secured loan on the property located at 27 Tanager Road which is owned by Real Rov, LLC of which the Debtor owns one-half and his wife owns the other half. Debtor on behalf of Real Rov, LLC hereby surrenders the property located at 27 Tanager Road to America's Service Company, in full satisfaction of its claim.

## ARTICLE 9

## DISCHARGE OF DEBTS

Confirmation of the Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in Section 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under Section 523 of the Code, except as provided in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure.

Provided, however that the Debtor shall not receive a discharge of any debts in connection with the Note, the Mortgage, the Stipulation, and the Final Loan Modification.

## ARTICLE 9

## LIMITATION OF LIABILITY; INJUNCTION

In accordance with Section 1125(e) of the Bankruptcy Code, upon the Effective Date, neither the Debtor nor his counsel or agents shall have incurred or shall incur any liability to any holder of a Claim or any other Person for any act or omission in connection with, or arising out of, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

The Debtor will be seeking an injunction protecting the Debtor/Reorganized Debtor and his Estate and assets, except as provided in the Plan, until the entry of an order by the Court granting the Debtor a discharge upon performance of all his duties and obligations under the Plan. The injunction will be sought because under the Bankruptcy Code [11 U.S.C. §1141(d)(5)] where, as here, the debtor in a Chapter 11 case is an individual, confirmation of the Plan does not discharge any debt provided for in a plan until the Court grants a discharge upon completion of all

payments under a plan. Therefore, at the Confirmation Hearing the Debtor will request the Court to enter a Confirmation Order providing that, as of the Confirmation Date, as to every holder of debt or Claims against the Debtor, the holders of such debt or Claims shall be enjoined from interfering with the Debtor's/Reorganized Debtor's ability to carry out the terms of the Plan. The order will further provide that in the event of default by the Debtor/Post-Confirmation Debtor under the Plan, a Claimant may make the appropriate applications to the Court seeking relief from such injunction. Provided however, that no injunction shall impair the rights of the Bank and Chase, or their successors and assigns under the Loan, the Note, the Mortgage, the Final Loan Modification and the Stipulation.

## ARTICLE 10

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until this case is closed to perform the following actions:

    (a) Ensure that the Plan is fully consummated;

    (b) Resolve all matters arising under or relating to the Plan, including, without limitation, its enforcement and interpretation;

    (c) Allow, disallow, determine, liquidate or classify, any Claims;

    (d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

    (e) Resolve any motions or applications still pending prior to the Effective Date;

    (f) Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with the bankruptcy case, including an order granting the Debtor's discharge upon certification of the

completion of all distributions under the Plan; and

(g) Enter a Final Decree concluding the bankruptcy case.

## ARTICLE 11

## CLOSING THE CASE

**1. Bankruptcy Fees.** All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through the entry of a Final Decree, or conversion or dismissal of the Debtor's bankruptcy case, whichever is earlier.

**2. Post-Confirmation Reports.** After Confirmation, the Debtor shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

**3. Closing the Case.** Within 14 days following the full administration of the estate, the Debtor shall file, on notice to the United States trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022. The Debtor may close the case after the Effective Date and reopen the case when the estate is fully administered in accordance with this Plan, in order to obtain a discharge.

Dated: Harrison, NY
July 14, 2017

By: *Philip C. Roventini*
Philip C. Roventini

BRONSON LAW OFFICES, P.C.

By:*/s/ H. Bruce Bronson*
H. Bruce Bronson
Bankruptcy Counsel to the
Debtor and Debtor-in-Possession